**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAMARA JOHNSON,** | : | |
| | : | |
| *Plaintiff,* | : | **CIVIL ACTION No.:** 2:25-cv-298 |
| | : | |
| **v.** | : | |
| | : | |
| **J.P. MORGAN CHASE BANK, N.A.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| *Defendant.* | : | |
| | : | |
| | : | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Tamara Johnson, by and through the undersigned counsel, J.P. Ward & Associates, LLC., and, specifically, Justin M. Bahorich, Esq., who files the within Complaint in Civil Action against Defendant, J.P. Morgan Chase Bank, N.A., of which the following is a statement:

## PARTIES

1. Plaintiff, Tamara Johnson (hereinafter "Plaintiff" or "Ms. Johnson"), is an adult individual who currently resides at 917 Locust Street, Braddock, PA 15104.

2. Defendant, J.P. Morgan Chase Bank, N.A., (hereinafter "Defendant" or "JP"), is a Foreign Business Corporation with headquarters located at 383 Madison Avenue, New York, NY, and principal place of business located at 26 Market Square, Pittsburgh, PA 15222.

## JURISDICTION AND VENUE

3.    Jurisdiction is proper as Ms. Johnson brings this lawsuit under Section 1981 of the Civil Rights Act of 1866 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964 42. U.S.C. §2000e *et seq.*, ("Title VII"), the Pregnant Workers Fairness Act 42 U.S.C. §§ 2000gg *et. seq.* (the "PWFA"), and the Pennsylvania Human Relations Act 43 P.S. §§ 951-963 (the "PHRA").

4.    Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b) in that this is the district in which the claims arose.

5.    On July 25, 2024, Ms. Johnson dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC").

6.    On November 29, 2024, Ms. Johnson received her right to sue from the EEOC.

7.    Ms. Johnson has exhausted all her administrative remedies under Title VII and the PWFA.

8.    Plaintiff intends to amend her Complaint to include PHRA claims upon completion of the PHRC's investigation on or after July 25, 2025.

## FACTUAL ALLEGATIONS

9.    On or around June 13, 2022, Ms. Johnson began her employment with Defendant, as an Associate Banker at its Market Square location.

10.    Ms. Johnson was a member of a protected class as a Black female who became pregnant during her employment with Defendant in or around October 2022.

11.    Defendant was fully aware of Ms. Johnson's of Ms. Johnson's pregnancy as she disclosed her pregnancy to Defendant's Branch Manager, Candice Livella ("Ms. Livella") and Lead Associate Operations (the "LAO"), Elizaveta Chesakova ("Ms. Chesakova").

12.    Following Ms. Johnson's disclosure of her pregnancy, Defendant began to discriminate against Ms. Johnson in the form of a demotion in position, denial of promotions and raises, and placement on a Performance Improvement Plan ("PIP").

### a.  **Defendant fostered a discriminatory and hostile work environment.**

13.    In or around October of 2022, Ms. Johnson asked Ms. Livella if she could move from working part-time to full-time.

14.    Ms. Livella denied Ms. Johnson's request to be a full-time Associate Banker and assigned Ms. Johnson to a "greeter" position in or around November 2022.

15.    Upon information and belief, Defendant demoted Ms. Johnson from her part-time position as an Associate Banker due to the anticipated time she would need for maternity leave and potential complications she may experience during her pregnancy.

16.    On or about December 6, 2022, Ms. Livella was absent, and Ms. Chesakova was left in charge.

17.    Ms. Johnson sent a text message to Ms. Livella expressing that she felt unsafe because of Ms. Chesakova's discriminatory behavior and harassment.

18.    Following Ms. Livella's report of Ms. Johnson's concerns, Ms. Chesakova retaliated against Ms. Johnson by berating her in front of coworkers.

19.    On the same day, Ms. Johnson reported the hostility she experienced to Defendant's Employee Relations Department, Mya LNU ("Ms. Mya").

20.    In or around January 2023, Ms. Chesakova continued to make inappropriate comments to other co-workers about Ms. Johnson and would exclaim, "Oh, I better not say that, I don't want to get written up."

21.    On or around March 8, 2023, when Ms. Johnson was six months pregnant, all employees within the office had to pose for a group picture.

22.    Ms. Chesakova said, "I want to stand next to [Ms. Johnson] so I can look skinnier."

23.    On or around March 9, 2023, Ms. Johnson was sitting down eating a piece of chocolate when Ms. Chesakova came in and told Ms. Johnson, "I don't give a s**t about you [Ms. Johnson]. I care about the baby, and you [Ms. Johnson]. shouldn't be eating that."

24.    It is important to note that Ms. Livella witnessed Ms. Chesakova's discriminatory remarks towards Ms. Johnson and failed to intervene or otherwise discourage Ms. Chesakova's discriminatory conduct.

25.    Ms. Livella threatened retaliation against Ms. Johnson if she reported Ms. Chesakova again. Ms. Livella stated that she would make sure that Ms. Johnson would be terminated and that other members of management would support her.

26.    Ms. Johnson proceeded to report Ms. Chesakova's conduct regardless of Ms. Livella's threats.

27.    On or around May 5, 2023, Defendant issued Ms. Johnson a "written warning disciplinary violation" and placed her on a 60-day Performance Improvement Plan (PIP) citing alleged violations dating back to February 2023 though April 18, 2023.

28.    The PIP was instituted one (1) month before Ms. Johnson was scheduled to go on approved maternity leave, of which Ms. Livella was fully aware.

**b. Pregnancy discrimination and retaliation continued following Ms. Johnson's return from maternity leave.**

29.    In or around October 2023, Ms. Johnson returned to work following her maternity leave.

30.    At that time, Ms. Livella was no longer employed by Defendant, but Ms. Chesknova remained in the LOA role.

31.    Ms. Chesknova held Ms. Johnson to a heightened level of scrutiny than her similarly situated co-workers who had not just given birth and/or returned from maternity leave.

32.    In or around November 2023, while Ms. Johnson was assisting a client with a transaction, Ms. Chesknova confronted her and criticized her work in front of the customer.

33.    Around the same time, Ms. Johnson requested a reasonable accommodation in the form of a private area to be able to pump breast milk.

34.    Ms. Johnson was forced to pump in the restroom which caused her great discomfort and  embarrassment.

35.    Ms. Johnson asked Hunter Landock ("Mr. Landock") about a privacy shield because she was being forced to pump her breastmilk in the open, in unsanitary conditions.

36.    Defendant eventually supplied Ms. Johnson with a privacy wall.

37.    Ms. Chesknova made numerous comments about Ms. Johnson to other co-workers and made it clear that she was uncomfortable with Ms. Johnson pumping milk.

38.    Kari Palmiscno ("Ms. Palmiscno"), an employee being trained by Ms. Chesknova, approached Ms. Johnson when she was pumping milk and remarked, "There will be nothing left of you!"

42.    Ms. Johnson became extremely uncomfortable and self-conscious about her recent pregnancy and maternity leave.

5

c. **Defendant allowed for the hostile work environment to continue after Ms. Johnson returned from maternity leave.**

39.    In or around February 2024, Ms. Kari and the new Branch Manager, Dustin Kawa (hereinafter "Mr. Kawa") began supervising Ms. Johnson.

40.    Ms. Johnson asked Mr. Kawa and Ms. Kari if she could work on the "Teller Express" and handle cash boxes.

41.    Ms. Kari opined that because Ms. Johnson had just delivered a baby she would be unable to perform the job.

42.    As a result of Ms. Kari's discriminatory opinion, Ms. Johnson was denied a role on the "Teller Express" and denied the opportunity for a pay raise.

43.    Later in the month of February 2024, Ms. Johnson was assigned to work on "Teller Express" and handled the cashbox.

44.    It is important to note that Ms. Johnson was the only one who did not receive a raise or promotion at this time.

45.    During this time, Ms. Kari made negative comments pertaining to Ms. Johnson's work such as, "I heard from Elizaveta [Ms. Chesknova] that you didn't know how to do anything right."

46.    In or around March 2024, when Ms. Johnson talked to another manager, Jason Lazor (hereinafter "Mr. Lazor") about a promotion, she was told she didn't have enough experience, which was the same reason given to her last time.

47.    Despite all the associate bankers doing the same work together, Ms. Johnson was the only one not given a raise or promotion.

d. **Defendant subjected Ms. Johnson to discrimination and retaliation on the basis of her race.**

48.     In or around March 2024, one of Ms. Johnson's co-workers, Shona LNU (hereinafter "Ms. Shona") told Ms. Johnson that she was an "Oreo" a racial reference to Ms. Johnson being both black and white.

49.     Ms. Johnson reported this instance to Mr. Kawa.

50.     Mr. Kawa failed to take any corrective action and disregarded Ms. Johnson's report.

51.     Additionally, Ms. Kari made discriminatory comments about Ms. Johnson's hair, such as, "I like your hair blonde and straight" suggesting that Ms. Johnson's natural hair was unprofessional.

52.     Ms. Kari referred to Ms. Johnson as the "Black girl in the office."

53.      Ms. Johnson and her co-workers often discussed Ms. Kari's racially charged comments.

54.     On or around March 13, 2024, Ms. Johnson reported the race discrimination to Ms. Lazor's assistant, Eyleen Bermudez (hereinafter "Ms. Bermudez") via text message.

55.     During this conversation, Ms. Bermudez explicitly warned Ms. Johnson against filing additional HR complaints, stating, *"***Also, don't file any more HR cases unless it's necessary."***

56.     Ms. Bermudez further admitted that Market Director, Sandra Reiman ("Ms. Reiman") had developed a negative perception of Ms. Johnson due to her complaints, stating, **"There seems to be drama surrounding your name, and Sandra is aware of it."**

57.     In the same conversation, Ms. Bermudez revealed that Chase managers intentionally withheld information regarding an open Relationship Banker position from Ms. Johnson, preventing her from applying for the opportunity stating:

**"And when the 'new position came out,' we were asked to specifically not tell you. And I asked why it was so specific to you, and they said because 'Abs' were talking, but they literally mentioned your name specifically."**

58.   On or around April 1, 2024, Ms. Reiman recommended Ms. Johnson for termination of employment under the pretextual reasoning of "unsatisfactory performance."

59.   Ms. Reiman cited multiple alleged violations dating back to or around January 30, 2024 through February 2024.

60.   Shortly after, on April 13th, 2024, Mr. Lazor informed Ms. Johnson that she was terminated.

61.    Mr. Lazor told Ms. Johnson that she "could take this time to be a mom."

62.   Confused, Ms. Johnson reached out to Employee Relations to request a termination letter and the reason for her termination.

63.   However, she was informed that she was listed as active and there was no record of her termination. Ms. Johnson was instructed to go through some procedural steps to figure out what happened.

64.   Despite that, Ms. Johnson was never scheduled to work again.

65.   Around Mother's Day of 2024, Ms. Johnson received a letter explaining her termination.

66.   Additionally, in June of 2024, Defendant continue to retaliate against Ms. Johnson when Defendant sent her a letter alleging overpayment of wages on "various dates" totaling $1,049.09.

67.   Defendant had actual knowledge of the direct discrimination and hostility Ms. Johnson endured when she made multiple reports to management.

68.    Defendant failed to act to protect Ms. Johnson from her supervisors' conduct.

69.    Due to her reports, Defendant made a concerted effort to conceal new employment opportunities from her before ultimately terminating her employment and claiming overpaid wages.

70.    Defendant's conduct described herein was willful, intentional and undertaken with a reckless disregard to Ms. Johnson's rights.

## <u>COUNT I</u>
## GENDER DISCRIMINATION ON THE BASIS OF PREGNANCY IN VIOLATION OF TITLE VII AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT

71.    Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

72.    Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual… because of such individual's race, color, religion, sex, or national origin;" 42 U.S.C. §2000(e-1)(a)(1). Further, Title VII dictates that "[t]he terms 'because of sex;' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment related purposes…" 42 U.S.C. §2000(e-1)(k)

73.    Further, the Pregnancy Discrimination Act ("PDA") prohibits—as a form of sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII")—adverse employment actions based on:

   a.   Current Pregnancy;

   b.   Past Pregnancy; and/or

9

c. Potential or intended pregnancy; and/or medical conditions related to pregnancy, and/or childbirth.

42 U.S.C. § 2000e(k); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir.), order clarified, 543 F.3d 178 (3d Cir. 2008).

74. In order for a plaintiff to establish a prima facie case of pregnancy discrimination, she must demonstrate that: (1) she was pregnant and the employer knew it; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) some nexus existed between her pregnancy and the adverse employment action. *Neidigh v. Select Specialty Hosp. McKeesport*, 664 Fed. Appx. 217, 221 (3d Cir. 2016) (citing *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008)).

75. Defendant constituted an employer within the meaning of Title VII.

76. Ms. Johnson constituted an employee within the meaning of Title VII.

77. In or around October 2022, Ms. Johnson was pregnant and disclosed her pregnancy to Defendant.

78. Ms. Johnson was qualified for her position and to perform the essential functions of her position.

79. When Ms. Johnson informed Defendant of her pregnancy, she was demoted from her position as an assistant bank teller to a greeter.

80. Further, Ms. Johnson was subjected to derogatory discriminatory comments based on her pregnancy by her similarly situated co-workers and direct supervisors.

81. Defendant failed to engage in the interactive process in good faith when Ms. Johnson requested an accommodation to allow her to pump breast milk.

10

82. Ms. Johnson reported the discriminatory conduct to Defendant, yet Defendant failed to take any form of corrective action and terminated her employment.

83. Defendant's management deliberately interfered with Ms. Johnson's career advancement, further reinforcing a pattern of discriminatory and retaliatory conduct.

84. Defendant's assertion that Ms. Johnson was terminated for "unsatisfactory performance" is pretext.

85. Following her termination, Mr. Lazor told Ms. Johnson that she "could take this time to be a mom."

86. The actions of Defendant were intentional, wanton, and willful, such that punitive damages are warranted.

87. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Tamara Johnson, hereby requests this Honorable Court enter judgment in her favor, and against Defendant, including back pay, front pay, loss of benefits, compensatory damages, punitive damages, injunctive relief, costs, and reasonable attorney's fees, in addition to any further relief as deemed just and proper.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII, AS AMENDED BY THE PDA

105. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

106. In order for a plaintiff to establish a prima facie case of retaliation under Title VII, she must demonstrate "(1) that she engaged in a protected activity, which can include informal protests of discriminatory employment practices such as making complaints to management; (2)

11

adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and the adverse action. *Moore v. Secretary U.S. Department of Homeland Security*, 718 Fed.Appx. 164, 167 (3d Cir. 2017) (citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)).

107.    During her tenure working at Defendant, Ms. Johnson engaged in protected activities by making numerous reports of discrimination based on her sex.

108.    Management failed to take any corrective action.

109.    Ms. Livella threatened to fire Ms. Johnson if she made a report regarding the derogatory comments made in reference to her pregnancy.

110.    Further, Ms. Bermudez warned Ms. Johnson not to make any more reports to Defendant's Human Resource Department.

111.    Ms. Johnson's adverse employment action was directly connected with her pregnancy due to Defendant being fully aware of her condition.

112.    Defendant additionally sent a letter to Ms. Johnson on June 13, 2024, requesting that she pay back the overpayment on her wages.

113.    Defendant's allegation of "unsatisfactory performance" resulting in termination is pretext.

114.    As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

115.    The actions of Defendant were intentional, wanton, and willful, such that punitive damages are warranted.

12

WHEREFORE, Plaintiff, Tamara Johnson, hereby requests this Honorable Court enter judgment in her favor, and against Defendant, including back pay, front pay, liquidated damages, loss of benefits, compensatory damages, punitive damages, injunctive relief, costs, and reasonable attorney's fees, in addition to any further relief as deemed just and proper.

## COUNT III
## DISCRIMINATION IN VIOLATION OF
## THE PREGNANT WORKER FAIRNESS ACT ("PWFA")

116. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

117. Under the PWFA, it is unlawful for an employer to "not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of the qualified employee." 42 U.S.C. § 2000gg-1(1).

118. It is unlawful for an employer to " take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee." 42 U.S.C. § 2000gg-1(5).

119. Defendant violated this provision by denying Plaintiff opportunities for promotion, training, and reinstatement based on her pregnancy and use of maternity leave.

120. Following Ms. Johnson's return from maternity leave in October 2023, Defendant refused to reinstate her to her prior position and instead kept her in the Greeter role.

121. Ms. Johnson requested training on Teller Express, which was necessary for promotion and pay increases, but Defendant denied her access to this training.

122. Further, Ms. Johnson requested an accommodation in the form of a privacy shield in order to pump her breastmilk.

13

123. Defendant failed to engage in the interactive process in good faith when it delayed providing an accommodation to Ms. Johnson, during which time she was forced to pump in the public restroom.

124. On or around April 1, 2024, Defendant's Market Director, Sandra Reiman, recommended Ms. Johnson's termination under the pretext of "unsatisfactory performance."

125. Ms. Johnson's termination occurred just weeks after she was explicitly warned in text messages that her name had a negative connotation with management due to her prior HR complaints related to pregnancy-related discrimination and accommodation.

126. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

127. The actions of Defendant were intentional, wanton, and willful, such that punitive damages are warranted.

WHEREFORE, Plaintiff, Tamara Johnson, hereby requests this Honorable Court enter judgment in her favor, and against Defendant, including back pay, front pay, loss of benefits, liquidated damages, injunctive relief, costs, and reasonable attorney's fees, in addition to any further relief as deemed just and proper.

## COUNT IV
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

128. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

129. Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. §2000e-2(a)(1).

130.    When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973). See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

131.    Ms. Johnson is a member of a protected class within the meaning of Title VII.

132.    Ms. Johnson was qualified for her position.

133.    Ms. Johnson was subjected to open and direct racial comments which she reported to Defendant.

134.    Defendant failed to take any form of corrective action toward any of the employees and/or members of management.

135.    On March 13, 2024, while making a report of racism to Ms. Bermudez via text message, Ms. Bermudez explicitly warned Ms. Johnson against filing additional HR complaints.

136.    Ms. Bermudez further admitted that Market Director, Sandra Reiman ("Ms. Reiman") had developed a negative perception of Ms. Johnson due to her complaints.

137.    In the same conversation, Ms. Bermudez revealed that Chase managers intentionally withheld information regarding an open Relationship Banker position from Ms. Johnson, preventing her from applying for the opportunity stating:

15

138. On or around April 1, 2024, Ms. Reiman recommended Ms. Johnson for termination of employment under the pretextual reasoning of "unsatisfactory performance."

139. Shortly after, on April 13th, 2024, Mr. Lazor informed Ms. Johnson that she was terminated.

140. The actions of Defendant were intentional, wanton, and willful, such that punitive damages are warranted.

141. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, loss of reputation, loss of professional opportunities, humiliation, and severe inconvenience all in the past, present, and future.

WHEREFORE, Plaintiff, Tamara Johnson, hereby requests this Honorable Court enter judgment in her favor, and against Defendant, including back pay, loss of benefits, injunctive relief, costs, and reasonable attorney's fees, in addition to any further relief as deemed just and proper.

## COUNT V
## RACIAL DISCRIMINATION IN VIOLATION OF SECTION 1981

142. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

143. 42 U.S.C. § 1981(a) provides that "All persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); *see also*, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

16

144. Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

145. Ms. Johnson was subjected to open and direct racial comments which she reported to Defendant.

146. Defendant failed to take any form of corrective action toward any of the employees and/or members of management.

147. On March 13, 2024, while making a report of racism to Ms. Bermudez via text message, Ms. Bermudez explicitly warned Ms. Johnson against filing additional HR complaints.

148. Ms. Bermudez further admitted that Market Director, Sandra Reiman ("Ms. Reiman") had developed a negative perception of Ms. Johnson due to her complaints.

149. In the same conversation, Ms. Bermudez revealed that Chase managers intentionally withheld information regarding an open Relationship Banker position from Ms. Johnson, preventing her from applying for the opportunity stating:

150. On or around April 1, 2024, Ms. Reiman recommended Ms. Johnson for termination of employment under the pretextual reasoning of "unsatisfactory performance."

151. Shortly after, on April 13th, 2024, Mr. Lazor informed Ms. Johnson that she was terminated.

152. Defendant's actions against Ms. Johnson were undertaken with reckless indifference to her federally protected rights to make and enforce contracts irrespective of her race.

153. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past, present, and future.

17

154. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Tamara Johnson, hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant, including an award of front pay, back pay, compensatory and punitive damages, costs and reasonable attorney's fees.

## COUNT VI
## RETALIATION IN VIOLATION OF SECTION 1981

155. Ms. Johnson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

156. The Third Circuit has held that retaliation claims under § 1981 are controlled by the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Canada v. Samuel Grossi & Sons*, 49 F.4th 340 (3rd Cir. 2022) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (holding that § 1981 "encompasses claims of retaliation")).

157. Under the first step of that framework, a plaintiff "must establish a prima facie case by showing '(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

158. Upon making these showings, the employer then, under step two, has the burden of producing evidence that "present[s] a legitimate, non-retaliatory reason for having taken the adverse action." *Daniels*, 776 F.3d at 193. If the employer meets this burden, the burden then

18

shifts "back to the plaintiff to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id.*

159. Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

160. Ms. Johnson engaged in protected activity when she reported the open and direct racial comments to Defendant.

161. Defendant failed to take any form of corrective action toward any of the employees and/or members of management.

162. On March 13, 2024, while making another report of racism to Ms. Bermudez via text message, Ms. Bermudez explicitly warned Ms. Johnson against filing additional HR complaints.

163. Ms. Bermudez further admitted that Market Director, Sandra Reiman ("Ms. Reiman") had developed a negative perception of Ms. Johnson due to her complaints.

164. In the same conversation, Ms. Bermudez revealed that Chase managers intentionally withheld information regarding an open Relationship Banker position from Ms. Johnson, preventing her from applying for the opportunity stating:

165. On or around April 1, 2024, Ms. Reiman recommended Ms. Johnson for termination of employment under the pretextual reasoning of "unsatisfactory performance."

166. Shortly after, on April 13th, 2024, Mr. Lazor informed Ms. Johnson that she was terminated.

167. Defendant additionally sent a letter to Ms. Johnson on June 13, 2024, requesting that she pay back the overpayment on her wages.

168. Defendant's allegation of "unsatisfactory performance" resulting in termination is pretext.

169. Defendant's actions against Ms. Johnson were undertaken with reckless indifference to her federally protected rights to make and enforce contracts irrespective of her race.

170. As a direct and proximate cause of the aforementioned conduct, Ms. Johnson suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past, present, and future.

171. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Tamara Johnson, hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant, including an award of front pay, back pay, compensatory and punitive damages, costs and reasonable attorney's fees.

## COUNT VII
## GENDER DISCRIMINATION IN VIOLATION OF THE PHRA

172. On July 25, 2024, Ms. Johnson filed her Charge of Discrimination with the EEOC which was also dual-filed with the Pennsylvania Human Rights Commission ("PHRC"). This count has not yet been administratively discharged and will be joined by amendment upon completion of the PHRC's investigation.

## COUNT VIII
## RETALIATION IN VIOLATION OF THE PHRA

173. On July 25, 2024, Ms. Johnson filed her Charge of Discrimination with the EEOC which was also dual-filed with the Pennsylvania Human Rights Commission ("PHRC"). This

20

count has not yet been administratively discharged and will be joined by amendment upon completion of the PHRC's investigation.

## COUNT VII
## RACE DISCRIMINATION IN VIOLATION OF THE PHRA

174.    On July 25, 2024, Ms. Johnson filed her Charge of Discrimination with the EEOC which was also dual-filed with the Pennsylvania Human Rights Commission ("PHRC"). This count has not yet been administratively discharged and will be joined by amendment upon completion of the PHRC's investigation.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: February 27, 2025                    By:  _/s/ Justin M. Bahorich_
                                                Justin M. Bahorich, Esq.
                                                (Pa. ID No. 329207)
                                                jbahorich@jpward.com
                                                J.P. Ward & Associates, LLC
                                                The Rubicon Building
                                                201 South Highland Avenue
                                                Suite 201
                                                Pittsburgh, PA 15206

                                                *Counsel for Plaintiff*